# UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF TEXAS
### SAN ANTONIO DIVISION

IN RE: § CASE NO. 01-55536-C
§
PURE ENERGY GROUP, INC. §
§
Debtor § CHAPTER 11

## THE DEBTOR'S SECOND AMENDED PLAN OF REORGANIZATION

Pure Energy Group, Inc., the Debtor-in-Possession, hereby files and proposes the following Second Amended Plan of Reorganization (the "Plan") pursuant to the provisions of Chapter 11 of the Bankruptcy Code:

## SUMMARY OF PLAN

The Plan provides for the full and complete satisfaction of the Allowed Claims of all Administrative, Priority, Secured and Unsecured Creditors, except for the Unsecured Creditors who are insiders. Under the Plan, the Creditors with Allowed Claims will receive distributions from an infusion of capital from an investor and from the revenues generated by its business. The outstanding common stock of the Debtor will be cancelled, and the new investors will be issued common stock representing one hundred percent (100%) ownership in the Debtor.

The Plan and its implementation, together with projections of income and expenses and the time frames governing completion of the Plan will be found in the Debtor's Second Amended Disclosure Statement for the Debtor's Plan of Reorganization pursuant to §1125 of the Bankruptcy Code (the "Disclosure Statement") accompanying the Plan. The Plan should be read in its entirety and considered in conjunction with the Disclosure Statement. The Debtor urges all Creditors and Parties in Interest to consult with their respective legal counsel on the Plan and Disclosure Statement. In this regard, the Creditors and Parties in Interest should not rely on any representations not contained in the Plan or Disclosure Statement in making a determination on voting on the Plan. A detailed discussion concerning the voting rights of Creditors will be contained in the Disclosure Statement.

## ARTICLE I.

### Definitions.

For the purposes of this Plan, the following terms shall have the following meanings, equally applicable to the singular and plural forms or the gender of the terms defined, unless the context clearly

Pure Energy Group, Inc.'s Plan of Reorganization
In re: Pure Energy Group, Inc., Debtor
P:\kmcelwain\wpdocs\Pure Energy\Plan-Disclosure\Second Amended Plan of Reorganization.doc

 PAGE 1

requires otherwise. These terms shall be designated, where such definition is applicable, with capital letters and those definitions shall be enforceable as terms of this Plan in conjunction with the respective matters to which they reference or define:

1.01.    Administrative Claim: means any costs and/or expenses incurred in the administration of the Case under §503(b) of the Bankruptcy Code that, if allowable, would be entitled to priority under §507(a)(1) of the Bankruptcy Code.

1.02.    Allowed Administrative Claim: means an Administrative Claim, proof of which was: (i) filed on or before the Bar Date, and a request for payment was filed with the Court and such claim was thereafter allowed by the Court, or (ii) is filed and allowed pursuant to 2.04.01 or 2.04.02 of the Plan.

1.03.    Allowed Claim: means any Claim against: (i) proof of which was filed with the Court on or before the Bar Date or pursuant to paragraph 2.04.02 herein; or (ii) the amount and validity of which has been determined by Final Order because of an objection or other proceeding filed with the Court; provided, however, that such Claim or Interest shall only be an Allowed Claim to the extent and in the amount identified in such Final Order.

1.04.    Allowed Secured Claim(s): means an Allowed Claim which is secured by a valid, duly perfected or unavoided or unavoidable lien (whether Voluntary or Involuntary) on, or a security interest in, property in which the Debtor has an interest (including Property of the Estate), or which is subject to set-off under §553 of the Bankruptcy Code, to the extent of the lesser of: (i) the value of such property securing the Allowed Secured Claim; or (ii) the amount of such Allowed Claim which is secured, including any election made pursuant to §1111 of the Bankruptcy Code.

1.05.    Allowed Tax Claim: means a Tax Claim against Debtor: (i) proof of which was filed with the Court on or before the Bar Date, or, with leave of court and without objection by any Party in Interest, late filed, and as to which no objection is filed by the Debtor or any Party in Interest, or (ii) as to which the Claim is an Allowed Claim by Final Order; provided, however, that such Claim shall only be an Allowed Claim to the extent and in the amount identified in such Final Order.

1.06.    Allowed Unsecured Claims: means an Unsecured Claim against Debtor: (i) proof of claim which was filed with the Court on or before the Bar Date, or, with leave of Court and without objection by any Party in Interest, late filed, and as to which no objection is filed by the Debtor or any Party in Interest, or (ii) as to which the Claim is an Allowed Claim by Final Order; provided, however, that such Claim shall only be an Allowed Claim to the extent and in the amount identified in such Final Order.

1.07.    Bankruptcy Code: means Title 11, U.S.C. §101 et seq., the statute of the United States, in effect on the Petition Date, and all amendments thereto, in effect on or before the Confirmation Date, or thereafter, only if specifically provided retroactive by any such amendment and only to the extent such

Pure Energy Group, Inc.'s Plan of Reorganization
In re: Pure Energy Group, Inc., Debtor
P:\kmcelwain\wpdocs\Pure Energy\Plan-Disclosure\Second Amended Plan of Reorganization.doc

PAGE 2

amendment may be valid and constitutional, and does not materially and adversely affect the interest of the Debtor, Creditors or any other Party in Interest. References in this Plan to "Section" or "Sections," unless otherwise specified, shall be to the Bankruptcy Code.

1.08. <u>Bankruptcy Rule(s)</u>: means the Federal Rules of Bankruptcy Procedure, as amended and prescribed under 28 U.S.C. §2075 (1978), applicable to the Case.

1.09. <u>Bar Date</u>: means March 18, 2002 for non-governmental agencies and June 16, 2002 for governmental agencies, the date that was fixed by the Court for filing Claims in the Case pursuant to Bankruptcy Rule 3003(b); provided, however, if the Court extends the time for filing any given Claim, the date so set shall be the Bar Date with respect to that Claim, but only with respect to such Claim.

1.10. <u>Case</u>: means the captioned Chapter 11 bankruptcy case, as commenced on November 21, 2001.

1.11. <u>Claim(s)</u>: means a "claim" alleged or which is, in fact, due or assertable against the Debtor as defined in §101(5) of the Bankruptcy Code and includes those Claims which are Allowed Claims and all those Claims which are not yet due, or which are unmatured, contingent and otherwise unliquidated.

1.12. <u>Class or Classification</u>: means the particular Class designated in this Plan pursuant to §§1122 and 1129 of the Bankruptcy Code into which a Creditor's Allowed Claim may be included, as provided in this Plan, including Classification for voting, for distributions and for impairment.

1.13. <u>Confirmation</u>: means entry by the Court of an order confirming the Plan at or after a hearing pursuant to §1129 of the Bankruptcy Code.

1.14. <u>Confirmation Date</u>: means the date of Confirmation.

1.15. <u>Court or Bankruptcy Court</u>: means United States Bankruptcy Court for the Western District of Texas, San Antonio Division.

1.16. <u>Creditor(s)</u>: means all persons or entities having Claims for debts, liabilities and demands of any character whatsoever, as defined in §101(10) of the Bankruptcy Code, including, but not limited to, future contingent Claims for unmatured potential liability of Claims of the United States Government and any agency or department thereof, and any other governmental authority, and whether or not the Creditor has an Allowed Claim.

1.17. <u>Debtor</u>: means Pure Energy Group, Inc., the Debtor in this proceeding under Chapter 11 of the Bankruptcy Code.

1.18. <u>Distribution Date</u>: means the date or dates upon which interim distributions provided under this Plan are to be made.

1.19. <u>Effective Date</u>: means the date upon which Confirmation becomes a Final Order.

Pure Energy Group, Inc.'s Plan of Reorganization
In re: Pure Energy Group, Inc., Debtor
P:\kmcelwain\wpdocs\Pure Energy\Plan-Disclosure\Second Amended Plan of Reorganization.doc

PAGE 3

1.20.   Executory Contract(s):  means any contract found to be of the nature referred to in §365 of the Bankruptcy Code as an Executory Contract which requires assumption and/or rejection by the Debtor.

1.21.   Exhibits:  means those items (i) attached to the Plan and incorporated herein by reference; and (ii) attached to the Approved Disclosure Statement and incorporated herein and therein by reference; and (iii) attached to the Order Confirming the Plan and incorporated herein and therein by reference.

1.22.   Final Order or Final Judgment:  means any order of the Court which is conclusive of all matters adjudicated therein, which is in full force and effect because the Final Order has not been:  (i) appealed, is not an allowed appeal or is denied review by certiorari or otherwise; or (ii) has not been reversed or modified; or (iii) which is not the subject of any pending appeal, review, rehearing, and is in all respects final and nonappealable.

1.23.   Initial Distribution Date:  means the date upon which the first distribution under the Plan shall be made.  The Initial Distribution Date shall be that date which the Debtor chooses in its sole discretion; however, it shall be no later than thirty (30) days after the Effective Date.

1.24.   Order Confirming the Plan:  means the Final Order pursuant to §1129 of the Bankruptcy Code, finding that the Debtor's Plan meets the requirements of Chapter 11 of the Bankruptcy Code and is entitled to Confirmation, and which may contain such other provisions, orders, findings, modifications and judgments which by the terms of the Plan or the Bankruptcy Code are appropriate and necessary to carry forward this Plan to Substantial Consummation, including the Exhibits (as may be amended or modified).

1.25.   Petition:  means the Voluntary Petition filed by Debtor under §301 of the Bankruptcy Code commencing the Debtor's Chapter 11 Case.

1.26.   Petition Date:  means November 21, 2001, the date the Voluntary Petition was filed by Debtor.

1.27.   Plan:  means this Plan of Reorganization, including any modifications, amendments or corrections made in accordance herewith under the provisions of the Bankruptcy Code.

1.28.   Priority Claim:  means any Claim, other than a Tax Claim or an Administrative Claim, entitled to priority under §507(a) of the Bankruptcy Code.

1.29.   Pro Rata or Pro Rata Share:  means the amount which is the result of multiplying the net proceeds or total proposed dividend owing to a named Class of Creditors pursuant to the terms of this Plan, by that fraction in which the numerator is the amount of the particular Creditor's Allowed Claim of the named Class and the denominator is the amounts of all Creditors' Allowed Claims of the named Class.

1.30.   Professional Fee(s):  means the Allowed Claim for, or the amount charged by, attorneys, accountants, appraisers or other professionals and reimbursement of expenses reasonably incurred in rendering such professional services which are:

Pure Energy Group, Inc.'s Plan of Reorganization
In re: Pure Energy Group, Inc., Debtor
P:\kmcelwain\wpdocs\Pure Energy\Plan-Disclosure\Second Amended Plan of Reorganization.doc

PAGE 4

      (i)      allowed pursuant to the Bankruptcy Code and entitled to priority status in priority to or as Administrative Claims pursuant to §§ 327, 328, 330, 331, 503(b)(3)(D), 507(a)(1), 1102 and 1103 of the Bankruptcy Code; and/or

      (ii)     allowed under the Plan after the Effective Date for services rendered after the Effective Date when approved by the Court, and only to the extent reasonable under existing case law either at law or in equity.

    1.31.   <u>Rejection Claim</u>: means any Claim arising by reason of rejection by the Debtor of a contract or lease pursuant to §§ 365 or 1123(b)(2) of the Bankruptcy Code.

    1.32.   <u>Revested Debtor</u>:  means Pure Energy Group, Inc. as revested with property of their bankruptcy estate pursuant to §1141(b) of the Bankruptcy Code.

    1.33.   <u>Secured Claim</u>: means the Claim of a Secured Creditor who holds a lien on Property of the Estate or property of the Debtor which the Debtor has not avoided, or do not seek to avoid prior to the Confirmation Date under §§ 545, 547 or 549 of the Bankruptcy Code, to the extent of the value of its lien on such property.

    1.34.   <u>Secured Creditor(s)</u>:  means a Creditor holding a Secured Claim perfected prior to the Confirmation Date, and may include Claims evidenced by valid Judgment Liens or Statutory Liens, including liens for taxes arising under I.R.C. §§ 6321 and 6322 and TEX. TAX CODE ANN. §32.01 (Vernon Supp. 1992), or other involuntary liens or mortgages, and all voluntary liens or mortgages against Property of the Estate.

    1.35.   <u>Settled Claim(s), Settlement(s) or Settle(d)</u>:  means Allowed Claims resulting from either the terms of agreements regarding disputed Claims approved by Final Order reached by and between:

      (i)      the respective Creditors having disputed, unliquidated, contingent or non-Allowed Claims; and

      (ii)     the Revested Debtor during the Case;

which fully liquidates and renders undisputed any Claim which is thereafter deemed an Allowed Claim.

    1.36   <u>Substantial Consummation</u>: shall be the earlier of the occurrence of "substantial consummation" as defined under Bankruptcy Code §1101 or the date upon which payment on the Claim of the Creditor in Class 4 has been tendered to such Creditor.

    1.37.   <u>Tax Claim</u>: means any Claim of governmental units for a tax described in §507(a)(7) of the Bankruptcy Code whether such Claim is an Administrative Claim or a Secured Claim, including penalty and interest on this claim.

Pure Energy Group, Inc.'s Plan of Reorganization
In re: Pure Energy Group, Inc., Debtor
P:\kmcelwaan\wpdocs\Pure Energy\Plan-Disclosure\Second Amended Plan of Reorganization.doc

PAGE 5

1.38. <u>Unsecured Claim</u>: means a Claim that is: (i) deemed unsecured pursuant to §506(a) of the Bankruptcy Code, (ii) for penalty and/or interest on a Tax Claim, (iii) a Rejection Claim, or (iv) not otherwise provided for in the Plan.

1.39. <u>Unsecured Creditor(s)</u>: means all Creditors holding Claims against the Debtor which are not Secured Claims.

A term in the Plan not otherwise defined herein but used or defined in the Bankruptcy Code or Bankruptcy Rules shall have the definition assigned to such term in the Bankruptcy Code or Bankruptcy Rules.

## ARTICLE II.

### Certain General Terms and Conditions.

2.01. <u>Classification, Satisfaction and Treatment of all Claims as defined in the Plan</u>: Various types of Claims are defined in this Plan. This Plan shall control all matters involving Classification, satisfaction and treatment of all Claims against the Debtor. The Plan is intended to satisfy, in the manner specified herein, all Claims against the Debtor of whatever character, whether contingent or liquidated, known or unknown, and whether Allowed Claims. ONLY ALLOWED CLAIMS, INCLUDING, BUT NOT LIMITED TO ALLOWED SECURED CLAIMS WILL RECEIVE THE TREATMENT AND DISTRIBUTIONS SPECIFIED BY THE PLAN. UPON THE EFFECTIVE DATE, THE DEBTOR SHALL BE RELEASED AND DISCHARGED FROM ALL DEBTS AND LIABILITIES INCURRED PRIOR TO THE CONFIRMATION DATE AND REVESTED DEBTOR SHALL OWN ALL OF ITS RESPECTIVE PROPERTY SUBJECT ONLY TO THE CLAIMS AND INTERESTS OF CREDITORS, IF ANY, AND LIENS AND ENCUMBRANCES, IF ANY, AS SPECIFICALLY SET FORTH IN THE PLAN.

2.02. <u>Securities Laws</u>: Any satisfaction provided to a Creditor pursuant to this Plan which is or may be deemed to be a security is exempt from registration under certain state and federal securities laws pursuant to Section 1145. Such exemption does not extend to most subsequent transfers of such interests by "underwriters" as that term is defined in Section 1145.

2.03. <u>Disbursing Agent</u>: The Revested Debtor shall serve as disbursing agent for all distributions under the Plan, without the requirement of posting a bond.

2.04. <u>Time for Filing Claims</u>:

2.04.01. All Proofs of Claim for Claims assertable and arising prior to the Bar Date and listed as disputed, contingent, or unliquidated in the Debtor's schedules filed in the Case, and all Claims assertable and arising during the Case, excluding Administrative Claims incurred: (i) after the Bar Date, or (ii) for Professional Fees shall have been filed with the United States Bankruptcy Clerk in San Antonio, Texas by the Bar Date, and thereafter allowed by the Court after notice and hearing, if necessary, and only Claims filed

Pure Energy Group, Inc.'s Plan of Reorganization
In re: Pure Energy Group, Inc., Debtor
P:\kmcelwain\wpdocs\Pure Energy\Plan-Disclosure\Second Amended Plan of Reorganization.doc

PAGE 6

of record shall be Allowed Claims, unless the Court has previously allowed a Claim not filed of record or unless such Claims are set forth in Debtor's schedules as disputed, contingent, or unliquidated. If a Claimant has already filed a Proof of Claim with the Bankruptcy Clerk, another Proof of Claim need not be filed by such Claimant, unless such previously filed Proof of Claim does not state the total dollar amount of the indebtedness owed to such Claimant, including, without limitation, penalties and/or interest on such Claim. Claims filed as a result of the Debtor's assumption or rejection of Executory Contracts after the Bar Date should also refer to Section VI of the Plan for special requirements regarding their Claims. The Revested Debtor reserves the right to object or dispute or to assert offsets or defenses against any Claims as to amount, liability or status. ALL CLAIMS AND ALL ADMINISTRATIVE CLAIMS WHICH AROSE PRIOR TO THE CONFIRMATION DATE AND FOR WHICH A PROOF OF CLAIM IS NOT TIMELY FILED IN ACCORDANCE WITH THIS PARAGRAPH 2.04.01, EXCEPT FOR CLAIMS LISTED IN DEBTOR'S SCHEDULES AND NOT DENOMINATED AS CONTINGENT, DISPUTED, OR UNLIQUIDATED, AND EXCEPT AS PROVIDED IN PARAGRAPH 2.04.02 BELOW, SHALL NOT BE ALLOWED, THE DEBTOR SHALL BE DISCHARGED FROM ANY AND ALL LIABILITY THEREFOR, AND THE CREDITOR HOLDING SUCH CLAIM SHALL BE FOREVER BARRED FROM ASSERTING SUCH CLAIM AGAINST REVESTED DEBTOR OR REVESTED DEBTOR'S ASSETS.

2.04.02.    All Administrative Claims in the Case, including Administrative Claims for Professional Fees under §330, including, but not limited to attorneys' fees and accountants' fees which arose on or before the Confirmation Date shall be filed with the United States Bankruptcy Clerk in San Antonio, Texas within ninety (90) days after the Effective Date. If these Claims are not filed on or before such deadline, such Claims shall not be allowed, unless the Court has ordered otherwise or orders otherwise.

2.05.   Modifications to the Plan: This Plan may be modified or corrected (upon Debtor's motion, if necessary, or by other appropriate means) pursuant to Section 1127 and Bankruptcy Rule 3019 prior to Confirmation. Modifications or corrections may be made without additional disclosure pursuant to Section 1125 provided that the Court finds that the modifications or corrections do not adversely affect any Claim or Interest or Classes of Claims or Interests. After the Confirmation Date, the Revested Debtor, upon order of the Court and in accordance with Section 1127(b), may remedy any defect or omission or reconcile any inconsistencies in the Plan in such a manner as may be necessary to carry out the purposes and intent of the Plan.

2.06.   Valuation of Secured Claims: All Secured Claims shall be allowed in an amount as:

(1)    agreed to by:

(a)    the Debtor, and
(b)    the Creditor holding the Secured Claim;

Pure Energy Group, Inc.'s Plan of Reorganization
In re: Pure Energy Group, Inc., Debtor
P:\kmcelwain\wpdocs\Pure Energy\Plan-Disclosure\Second Amended Plan of Reorganization.doc

PAGE 7

(2)      ordered by the Court pursuant to § 506 of the Bankruptcy Code; or

(3)      as set forth herein.

Any unsecured portion shall not be an Allowed Claim unless such Creditor has filed a Proof of Claim by the Bar Date pursuant to paragraph 2.04.01 herein, or the Court has allowed the Claim for such unsecured portion pursuant to a Final Order. The Court shall not be required to determine the amount of a Secured Claim unless a motion to require such determination is made by the Debtor, or other party in interest.

## ARTICLE III.
## Division of Creditors Into Classes.

3.01.   Class 1:  Creditors holding Allowed Administrative Claims relative to the Case, including the U.S. Trustee's Claim, if any, for allowed fees-Estimated Amount of Claims is $475,000.00 ($125,000.00 for Debtor's counsel for fees connected with the Bankruptcy Case and $150,000.00 for fees connected with the adversary proceeding). An additional $200,000.00 is included as an estimate for potential additional claims. The claims of Frank James and Ralph Perry for monies advanced to the Debtor is a debtor-in-possession loan (some $5,000.00, plus interest), and will be included as Class 1 Administrative Claims.

3.02.   Class 2:  Creditors holding Allowed Secured Tax Claims-Estimated Amount of Claims is $71,365.00 (I.R.S. and local tax claim).

3.03.   Class 3:  Priority Tax Claims. Creditors, including the I.R.S., who have allowed tax claims that are unsecured. These claims are estimated at $100,000.00.

3.04.   Class 4:  Manix Energy, Ltd., to the extent that it holds an Allowed Secured Claim. The estimated amount of this claim is $4,300,000.00, but only $3,800,000.00 is recourse to Pure.

3.05.   Class 5:  Creditors holding Allowed Unsecured Claims, including trade creditors and the settled claim of One Riverwalk Place, but excluding JBJ Lending's claim and the claims of Ralph Perry, Frank James, and Alicia B. James. These claims are estimated at $667,649.00.

3.06.   Class 6:  Claim of JBJ Lending, c/o EFO Holdings, Inc. This claim is estimated at $2,582,874.31, as of November 21, 2002.

3.07.   Class 7:  Pre-petition Claims of insiders, including Frank James, Ralph Perry, and Alicia B. James. These claims are estimated at $3,129,615.28.

3.08.   Class 8:  Equity holders, Hammer Energy Assets, Inc., Jeffrey A. Hamm, and Patricia L. Hamm.

Pure Energy Group, Inc.'s Plan of Reorganization
In re: Pure Energy Group, Inc., Debtor
P:\kmcelwain\wpdocs\Pure Energy\Plan-Disclosure\Second Amended Plan of Reorganization.doc

PAGE 8

# ARTICLE IV.

## Treatment of Classes.

4.01.    Unimpaired Classes: Creditors holding Claims in Classes 1, 2, and 4 are unimpaired under this Plan, or they have agreed to the treatment proposed under the Plan, and the holders of such Claims are deemed to accept this Plan.

A.    Class 1:    Each holder of an Allowed Claim in Class 1 shall be paid in full in cash upon the Initial Distribution Date, except as may be otherwise agreed upon in writing between the Revested Debtor and each respective Class 1 Creditor; provided, however, that all trade and service and all other obligations incurred in the normal course of business by the Debtor after the Petition Date shall be paid in full when due in the ordinary course of business.

B.    Class 2:    Each holder of an Allowed Claim in Class 2 shall be paid in full in cash upon the Initial Distribution Date, except as may be otherwise agreed upon in writing between the Revested Debtor and each respective Class 2 Creditor.

C.    Class 4:    The holder of an Allowed Claim in Class 4 shall be paid $3,750,000.00. in cash upon the Initial Distribution Date.  An additional $50,000.00 will be withheld pending the outcome of Manix's adversary proceeding against Mission Energy, Case No. 02-5104 In the United States Bankruptcy Court, Western District of Texas, San Antonio Division.  Manix's lien against the assets of Pure will be released in full, but its lien against the assets involved in the Mission Lawsuit will not be released.  In the event Manix's ultimate recovery in the Mission Lawsuit is reduced below $550,000.00 through a defense by Mission, Pure will be liable to pay up to $50,000.00 of that reduction.  The balance of the Class 4 Claim will be nonsecured as to Pure.  The Order Confirming this Plan shall be deemed to be a release of the lien held by Manix on all of the assets of Pure contingent only upon the tender of payment of $3,750,000.00 to Manix pursuant to the terms hereof.  Evidence of such release may be demonstrated of record in applicable real property records by filing an affidavit in the appropriate county with a copy of the Order Confirming this Plan, a copy of this Plan, and a representation that payment has been tendered to Manix.

4.02.    Impaired Classes:  The Claims of the following Classes of Creditors are impaired under the Plan and Creditors in these Classes and will be allowed to vote to accept or reject the Plan.

A.    Class 3:    Each holder of an Allowed Claim in Class 3 shall be paid in two equal annual installments of principal, plus accrued post-petition interest at nine percent (9%), beginning upon the first anniversary of the Initial Distribution Date, except as may be otherwise agreed upon in writing between the Revested Debtor and each respective Class 3 Creditor.  This claim may be prepaid in whole or in part at any time.

Pure Energy Group, Inc.'s Plan of Reorganization
In re:  Pure Energy Group, Inc., Debtor
P:\kmcelwain\wpdocs\Pure Energy\Plan-Disclosure\Second Amended Plan of Reorganization.doc

PAGE 9

B. <u>Class 5</u>: Each holder of an Allowed Claim in Class 5 shall be paid in two equal annual installments of principal, plus accrued post-petition interest at nine percent (9%), beginning one year after the Initial Distribution Date, except as may be otherwise agreed upon in writing between the Revested Debtor and each respective Class 5 Creditor. This obligation may be prepaid in whole or in part at any time.

C. <u>Class 6</u>: EFO Holding, Inc. will be paid One Million Dollars ($1,000,000.00) in cash on the Initial Distribution Date and will be paid accrued interest monthly thereafter at nine percent (9%) per annum, but such interest will accrue only from and after November 21, 2002, the date through which interest on the Claim has already been included. EFO will be paid Five Hundred Thousand Dollars ($500,000.00) of principal on the first anniversary of the Confirmation Date and the balance on the second anniversary of the Confirmation Date. This obligation may be prepaid in whole or in part at any time.

D. <u>Class 7</u>: Frank James, Ralph Perry, and Alicia B. James will receive up to the following amounts out of future revenue of Pure:

| | |
|---|---|
| Frank James: | $1,423,271.91 |
| Ralph Perry: | $1,378,899.00 |
| Alicia B. James: | $   327,444.37 |
| TOTAL | $3,129,615.28 |

These payments will be made to Frank James, Ralph Perry, and Alicia B. James out of net revenues of the Company (defined as revenues from producing wells net of lease operating expenses and other direct costs). The amount of the payments will be computed by multiplying the net revenues on an annual basis by seven percent (7%), beginning at the end of the third year after confirmation of the Plan. The first payment shall be due sixty (60) days after the end of the third year with subsequent payments being made annually thereafter until Frank James, Ralph Perry, and Alicia B. James are paid in full the amounts set forth above.

E. <u>Class 8</u>: All common stock outstanding as of the filing date of the petition in this case will be cancelled and the stockholders will receive nothing of value. The Claim of Jeffrey A. Hamm and Patricia L. Hamm for subrogation on the debt to Manix, which they guaranteed, is subordinated to the Claim of Manix under Bankruptcy Code §509(c). Further, no subrogation claim has arisen to date because the Hamms have paid nothing to Manix that would create a subrogation claim under §509(a). Given that the additional Claims of Jeffrey A. Hamm and Patricia L. Hamm arose out of the sale of stock of the Debtor, these Claims will be treated as equity under Bankruptcy Code §510(b) and not paid. The Claim of Hammer Energy Assets, Inc. is a claim for contribution toward its liability on the lease to One Riverwalk Place, which it has not paid to date. Such Claim is subordinated to the Claim of One Riverwalk Place until such time as One Riverwalk Place has been paid in full under Bankruptcy Code §509(c). Until such time as Hammer Energy Assets has paid One Riverwalk Place, no subrogation will arise. The Debtor has filed or intends to file a claim objection to the Hammer Energy Assets Claim on the grounds that the Debtor has no liability on this Claim.

Pure Energy Group, Inc.'s Plan of Reorganization
In re: Pure Energy Group, Inc., Debtor
P:\kmccilwain\wpdocs\Pure Energy\Plan-Disclosure\Second Amended Plan of Reorganization.doc

PAGE 10

# ARTICLE V.

## Means for Execution of the Plan.

5.01. <u>Implementation of the Plan and Revesting of Property of the Estate in Revested Debtor</u>: On the Confirmation Date, the Revested Debtor shall assume all duties, liabilities, and obligations for performance of the provisions of the Plan and shall make the distributions required under the Plan.

The Plan is simple in concept. All existing stock in Pure will be canceled. One hundred percent (100%) of the newly issued common stock of Pure Energy Group, Inc. will be owned by Pure Energy, L.L.P., an entity to be formed and controlled by Mr. Jim Swink, Jr. and Mr. David Crews. Other investors will participate with Messrs. Swink and Crews; however, it is anticipated that no other individual investor will own enough of the investment entity to assert control over Pure. None of the current insiders of Pure will hold equity of any kind in the reorganized Pure; however, John B. Connally and Larry Cochran will own the interests set forth hereinbelow.

Pure will be managed by the management team discussed elsewhere herein.

Mr. Jim Swink is an independent investor in Little Rock, Arkansas. His principal business is corporate finance. Most recently, he served as the reorganization manager for Cytomedix, Inc. in its successful Chapter 11 in Federal Bankruptcy Court in Chicago, Illinois. Prior to and during that reorganization, Messrs. Swink and Crews and their associates provided approximately Seventeen Million, Five Hundred Thousand Dollars ($17,500,000.00) of financing to Cytomedix.

Mr. David Crews is from Little Rock, Arkansas, and is a principal in the firm of Crews & Associates, a Little Rock based securities firm founded by Mr. Crews' father. Crews & Associates had securities sales for the month of September 2002 of approximately Four Hundred Fifty Million Dollars ($450,000,000.00). Mr. Crews also invests individually and provides financing similar to that provided by Messrs. Swink, Crews, and associates for Cytomedix.

Messrs. Swink and Crews have worked together on multiple transactions and Mr. Connally consulted with them on the Cytomedix transaction.

Wave Holdings, L.P. is an oil and gas investment vehicle managed by Mr. Jeff Rand, also of Little Rock, Arkansas. On a combined basis, these companies invest tens of millions of dollars annually in different types of transactions.

CCJ/BDR Investments, L.L.C. will be the general partner of Pure Energy, L.L.P. Pure Energy L.L.P. will be owned twenty percent (20%) by Wave Holdings, L.P. and twenty percent (20%) by management (John B. Connally, III (10%), Larry B. Cochran (5%), Earl Sebring (2.5%) and Randy Ford (2.5%)). The remaining sixty percent (60%) will be owned by other investors.

Pure Energy Group, Inc.'s Plan of Reorganization
In re: Pure Energy Group, Inc., Debtor
P:\kmcelwain\wpdocs\Pure Energy\Plan-Disclosure\Second Amended Plan of Reorganization.doc

PAGE 11

Wave Holdings, L.P. has committed in writing to fund up to Seven Million, Seven Hundred Thousand Dollars ($7,700,000.00) to CCJ/BDR Investments, L.L.C. CCJ/BDR Investments, L.L.C. has committed in writing to fund Four Million, Eight Hundred Thousand Dollars ($4,800,000.00) to Pure to meet the cash requirements under the Plan. A copy of the commitment letter from CCJ/BDR Investments, L.L.C. is attached to Debtor's Second Amended Disclosure Statement as Exhibit "F." These investments are subject to the condition that the Bankruptcy Court approves the Plan of Reorganization in this case and such order becomes final and non-appealable.

The balance of the commitment of Wave Holdings, L.P. will be used to fund a drilling program in the amount of approximately Three Million Dollars ($3,000,000.00), which program is set forth in the projections attached to Debtor's Second Amended Disclosure Statement as Exhibit "D." Pure believes the drilling program will achieve increased revenues for Pure Energy Group, Inc. and to begin developing its properties in an intelligent manner.

Under the terms of the Plan, Pure will pay Manix Three Million, Seven Hundred Fifty Thousand Dollars ($3,750,000.00) cash, leaving Manix with a remaining allowed claim of Five Hundred Fifty Thousand Dollars ($550,000.00). Manix will release its lien on all properties owned by Pure, but not on properties for which it is pursuing foreclosure in the Mission Law Suit. Of Manix's remaining claim, only Fifty Thousand Dollars ($50,000.00) will be an unsecured obligation of Pure with recourse. The balance will be non-recourse as to Pure. The Fifty Thousand Dollar ($50,000.00) recourse amount is to be paid if and only to the extent that Manix's recovery in the Mission Lawsuit is reduced below Five Hundred Fifty Thousand Dollars ($550,000.00) through a Claim of offset by Mission.

Pure will also pay all of its administrative claims, in cash, in full, upon the effective date of the Plan.

JBJ Lending Group ("JBJ Lending") is a Dallas, Texas, based entity owned by a marital deduction trust for the benefit of Kathy Esping. Kathy Esping is the mother of one of the shareholders, Bill Esping. It is managed under contract by EFO Holdings, Inc., but EFO Holdings, Inc. does not have a beneficial interest thereunder. Larry Wallace is the President of JBJ Lending. JBJ Lending had a scheduled claim for money loaned to the Debtor in the amount of One Million, Eight Hundred Twenty-One Thousand, Seven Hundred Fifty-Six and 06/100 Dollars ($1,821,756.06). This debt was guaranteed by Frank James and Ralph Perry as well as by Bradley James. The scheduled amount of the claim does not include post-petition or pre-petition interest. In the event the full amount of the claim is not paid by the Debtor, Frank James and Ralph Perry would be called upon to pay any unpaid amount, thereby creating a claim for subrogation against the Debtor that would need to be paid. The full amount of the JBJ Lending Claim through November 21, 2002 is Two Million, Five Hundred Eighty-Two Thousand, Eight Hundred Seventy-Four and 31/100 Dollars ($2,582,874.31), and it was due and payable prior to the filing of the Petition in this case. Of that amount, Five

Pure Energy Group, Inc.'s Plan of Reorganization
In re: Pure Energy Group, Inc., Debtor
P:\kmceiwain\wpdocs\Pure Energy\Plan-Disclosure\Second Amended Plan of Reorganization.doc

PAGE 12

Hundred Thirty-Nine Thousand, Nine Hundred Eighty-Five and 41/100 Dollars ($539,985.41) is pre-petition interest and Two Hundred Eighty Thousand, Ninety-Eight and 22/100 Dollars ($280,098.22) is post-petition interest. In exchange for a negotiated delay in the payout of such Claim, and for forbearance of any suit on the Ralph Perry and Frank James guarantees, Debtor has agreed to pay JBJ Lending the full amount of its Claim. This agreement is or will be the subject of an application to compromise and settle claims. Pure will pay cash in the amount of One Million Dollars ($1,000,000.00) to JBJ Lending, c/o EFO Holdings, Inc., the balance to be paid over two (2) years, as set forth below. The balance of the creditors will be paid out over time.

The trade creditors will be paid in full over a two (2) year period with two (2) equal payments of principal plus post-petition accrued interest, fully amortizing and at an interest rate of nine percent (9%).

One Riverwalk Place was the landlord of the Debtor prior to filing. While the Debtor scheduled it at Sixteen Thousand, Four Hundred Seventy-Five and 12/100 Dollars ($16,475.12), One Riverwalk Place claims some Seventy Thousand Dollars ($70,000.00) for administrative and future rent. Debtor disputes liability due to its eviction prior to the filing of the Petition in this case and the fact that it was merely a subtenant. In order to compromise and buy peace, Debtor has agreed to pay One Riverwalk Place, c/o Trammell Crow Company, the sum of Fifty Thousand Dollars ($50,000.00). Trammell Crow Company and One Riverwalk Place have agreed not to execute on or seek turnover of any stock of the Debtor prior to Confirmation. This agreement is or will be the subject of an application to compromise and settle claims.

The creditors who are insiders, Frank James, Ralph Perry, and Alicia James will be paid contingent upon future success in drilling. They will be paid seven percent (7%) out of future revenues, beginning in year four. Their payments will be capped at the amount of their allowed claims with no post-petition interest. In the event that no revenues ever occur, there will be no liability of the Company to these creditors for this claim. Each of these individuals made actual loans of money to the Debtor. Alicia James sold some separate property she owned and used proceeds to pay down the JBJ Lending loan. Frank James actually made the Manix payment for many months. Ralph Perry loaned the Company money to pay earnest money for the Bayless acquisition.

Jeffrey A. Hamm and his wife, Patricia L. Hamm, (the "Hamms") were originally shareholders in the Debtor. They guaranteed the debt to Manix. They have now been sued by Manix for payment on such debt. Given that the Manix debt will most likely be paid in full through the Plan or through the Mission Lawsuit, it is extremely remote that they will ever have a subrogation claim against the Debtor. It is, however, Manix's position that, except for credits to the debt for payments made by Pure, all of the guarantors of the Note remain fully liable for the balance due on the Manix Note. Manix vigorously disputes that its debt will be paid in full or through the Mission Law Suit. Additionally, the Hamms' Claim arose in connection with the purchase of a security in the Debtor and should be subordinated to the position of equity. The Hamms dispute that their

Pure Energy Group, Inc.'s Plan of Reorganization
In re: Pure Energy Group, Inc., Debtor
P:\kmcelwain\wpdocs\Pure Energy\Plan-Disclosure\Second Amended Plan of Reorganization.doc

PAGE 13

Claim is or will be subordinated. The Debtor would have to file a Claim objection and win to achieve this result. In the event the Debtor is unsuccessful in subordinating the Hamms' contingent claim for subrogation, and if the Hamms actually pay Manix on their guarantee, and, further, if Manix is actually paid in full, the Hamms would have a ripe subrogation claim against the Reorganized Debtor for the amount they actually paid to Manix. It is the Debtor's position, however, that once Manix is paid under the terms of the Plan and the Mission Law Suit, that they have no further claim against the Debtor that any guarantor could obtain through payment and subrogation. The terms of the Plan do not decide the issue of the effect on guarantor of Debtor's Plan payments to Manix.

The Hamms sold their stock in the Debtor for One Million, Five Hundred Thousand Dollars ($1,500,000.00) to Brad James pursuant to a written agreement. The Debtor was not a party to this agreement initially, but part of the consideration to the Hamms was that Bradley James caused certain overriding royalty interests of the Debtor to be conveyed to the Hamms. It is the Debtor's position that the Debtor received nothing in return from either Bradley James or the Hamms. Further, when Bradley James could not pay his debt from such sale of stock, he caused the Debtor to make the payments and/or release Jeffrey Hamm from liability to Pure (which payments and releases total at least One Hundred Twenty-Five Thousand Dollars ($125,000.00)) to the Hamms. Finally, in order to gain a forbearance from past due payments to the Hamms, Bradley James signed a guaranty of the debt to the Hamms as President of the Debtor. Again, the Debtor received nothing of value from the Hamms from this gratuitous act by Bradley James. The entire transaction benefited only the Hamms and Bradley James. It was detrimental to the Debtor in that the Debtor was stripped of significant amounts of cash, an obligation from Hammer Energy, and several producing oil and gas properties. The Hamms have, thus, already received significant value for their stock in the Debtor and will not receive anything else of value. The Hamms dispute these facts and the legal conclusions relating to consideration received by the Debtor. The Debtor will have to bring a Claim objection and win in order to prevail on this issue. Otherwise, the Hamms have a Claim against the Debtor on this guarantee that is not provided for in the Plan. The Debtor has been told that the Hamms will likely object to the Plan because it does not deal with their Claim. There is a possibility that they could prevail and could prevent the Plan from being confirmed. The Debtor believes that it will prevail on its Claim objection. The terms of the Plan do not decide the merits of the Claim objection.

Hammer Energy Assets was the sublandlord to the Debtor on the lease from One Riverwalk Place. While the Debtor did not sign an agreement to be liable on such lease, in one of the forbearance agreements mentioned above connected with the sale of stock in the Debtor by the Hamms, Bradley James signed a guaranty that some interpret to be a guaranty of the said lease by Pure. Given that the Hamms have already received cash in excess of the remaining liability on the said lease and, given that they are the primary

Pure Energy Group, Inc.'s Plan of Reorganization
In re: Pure Energy Group, Inc., Debtor
P:\kmcelwain\wpdocs\Pure Energy\Plan-Disclosure\Second Amended Plan of Reorganization.doc

PAGE 14

shareholders of Hammer, the Debtor does not intend to compensate Hammer in any way for its potential liability on such lease. Significantly, Hammer has not paid One Riverwalk on the lease. Consequently, to date there is not even a subrogation claim for reimbursement. Finally, pursuant to the terms of the Plan, the Debtor will pay a significant amount of the outstanding lease liability to One Riverwalk Place. The Hamms' position is that the Debtor has a contractual guaranty on the lease, and that, to the extent Hammer Energy Assets, Inc. pays money to the landlord, Hammer Energy Assets, Inc. will have a subrogation claim against the Reorganized Debtor. The Hamms would have to pay such claim in full under Bankruptcy Code §509(c) before their subrogation claim would arise. The terms of the Plan do not decide the merits of this Claim objection.

All Administrative Claims in the Case: (i) for Professional Fees under Section 328 or 330 of the Bankruptcy Code, including, but not limited to attorneys' and accountants' fees, and for any other administrative expenses which arose on or before the Confirmation Date shall be filed with the United States Bankruptcy Clerk in San Antonio, Texas within thirty (30) days after the Effective Date.

Exhibit "D" attached to Debtor's Second Amended Disclosure Statement is a copy of Pure's projection relating to future operations. Exhibit "E" attached to Debtor's Second Amended Disclosure Statement contains a list of scheduled claims. This list does not include the claim of Trammell Crow Company, which has been settled at Fifty Thousand and No/100 Dollars ($50,000.00), even though such Claim was timely filed.

Upon the Effective Date, title to all assets and properties whatsoever of the Debtor, sometimes referred to in this Plan as "Property of the Estate," shall be retained by and revest in the Debtor free and clear of all Claims, liens, security and equitable interests, except as may be otherwise provided by, and subject to the distributions required under, this Plan. However, the revesting of title shall not extinguish the rights and powers of the Revested Debtor to prosecute and object to Claims after Confirmation. In the event of a post confirmation conversion of the Chapter 11 case to a Chapter 7 proceeding under Title 11 of the United States Code, all remaining conditionally vested property, if any, that was property of the Bankruptcy Estate shall come into and become a part of the Chapter 7 Bankruptcy Estate. The Order Confirming the Plan shall be a judicial determination of the discharge of the liabilities of and Claim against the Debtor, except only as may be otherwise provided for in this Plan.

     5.01.01.    The Revested Debtor is hereby empowered to take such actions and execute such documents, as may be reasonable and necessary or appropriate to execute and implement the provisions of this Plan, subject to Court approval where required under the Plan.

     5.02.    Distributions Under the Plan: The Revested Debtor, in its sole discretion and pursuant to the terms of the Plan, will make those transfers and distributions required by this Plan upon the later to occur of (i) the Initial or subsequent Distribution Date, or (ii) as soon as practicable after a Final Order is entered allowing the holder's Claim, or (iii) as otherwise provided by other Final Orders. No distribution or transfer shall be

Pure Energy Group, Inc.'s Plan of Reorganization
In re: Pure Energy Group, Inc., Debtor
P:\kmcelwain\wpdocs\Pure Energy\Plan-Disclosure\Second Amended Plan of Reorganization.doc

PAGE 15

made, however, which would result in any Creditor receiving more than is specifically provided for in this Plan.

      5.02.01.      <u>Manner of Payments</u>:  Payments to be made by the Revested Debtor pursuant to the Plan shall be made by check drawn on a domestic bank from a domestic bank.

      5.03.      <u>Cramdown</u>:  The Court may confirm the Plan even though fewer than all Classes of Creditors have accepted the Plan.  In the event that any impaired Class of Creditors fails to accept the Plan by adequate vote as described in §§ 1126 and 1129(a), the Debtor hereby requests that the Court confirm the Plan in accordance with §1129(b) of the Bankruptcy Code.  Furthermore, to the extent the Plan does not embody certain provisions setting forth the circumstances apprehended by §1129(b), the Debtor will amend or modify the Plan to include such provisions should it become necessary to confirm the Plan under cramdown.

      5.04.      <u>Unclaimed Distributions</u>:  In the event that the Revested Debtor is unable to locate a holder of a Claim in order to make such distribution as herein provided, the Revested Debtor shall hold such distribution for the benefit of such Claim until all payments and transfers are made pursuant to this Plan, then such distributions or property shall be paid Pro Rata to Class 6 Creditors, unless the Class 6 Creditors have been paid in full pursuant to the terms of the Plan, and then such distributions or property shall be paid to the Revested Debtor.

      5.05.      <u>Documentation</u>:  The appropriate documentation for each transaction contemplated herein shall be subject to the approval of the Revested Debtor .

      5.06.      <u>Controversy Concerning Impairment</u>:  In the event of a controversy as to whether any Creditor(s), classes of Creditors are impaired under the Plan, the Bankruptcy Court shall, after notice and hearing, determine such controversy.  To the extent that the Court finds that a Class of Creditors or a Creditor(s) is impaired where designated as unimpaired, that Creditor or Class of Creditors may file a vote, notwithstanding other provisions, at the time of Confirmation.  If determined to be unimpaired, the Creditor or Class of Creditors shall be deemed to accept the Plan as provided in §1126(f).

## ARTICLE VI.

## <u>Executory Contracts and Unexpired Leases.</u>

      6.01.      Debtor's various oil and gas leases are interests in land and not executory contracts to be assumed or rejected.

All operating agreements between the Debtor and operators of the Debtor's properties (and affiliated entities) are hereby assumed as of the Confirmation Date, however any obligation to pay past due amounts or defaults under such operating agreements shall be paid as and when Class 5 Claims are paid.  Agreements between the Debtor and the following parties are hereby assumed under this paragraph:

Pure Energy Group, Inc.'s Plan of Reorganization
In re:  Pure Energy Group, Inc., Debtor
P:\kmcelwain\wpdocs\Pure Energy\Plan-Disclosure\Second Amended Plan of Reorganization.doc

PAGE 16

| Other Parties to Contract | Description of Contract |
|---|---|
| Oxy USA, Inc.<br>P.O. Box 841784<br>Dallas, TX 75284-1784 | Operating Agreement and Term Assignment/Farmout Agreement with Debtor |
| EOG Resources, Inc.<br>P.O. Box 840319<br>Dallas, TX 75284-0319 | Two Operating Agreements with Debtor |
| Yates Petroleum Corporation<br>105 S. 4th St.<br>Artesia, NM 88210 | Operating Agreement and Term Assignments/Farmout Agreements with Debtor |
| Chi Operating, Inc.<br>P.O. Box 1799<br>Midland, TX 79702 | Operating Agreement with Debtor and Term Assignment/Farmout Agreements with Debtor |
| Louis Dreyfus Natural Gas Corp.<br>P.O. Box 847764<br>Dallas, TX 75284-7764 | Operating Agreement with Debtor |
| Nearburg Producing Co.<br>Glen Lakes Drive<br>Dallas, TX 75231 | Operating Agreement with Debtor |
| Southwestern Energy Corp.<br>P.O. Box 1408<br>Fayetteville, AR 72702-1408 | Operating Agreement with Debtor |
| Tenneco Oil Co.<br>Total/Fina<br>P.O. Box 2511<br>Houston, TX 77252 | Preferential Rights Agreement |
| Capataz Operating, Inc.<br>P.O. Box 10549<br>Midland, TX 79702 | Operating Agreement with Debtor |
| Hanagan Petroleum Corp.<br>400 Kentucky Ave.<br>Roswell, NM 88201 | Operating Agreement with Debtor |

Pure Energy Group, Inc.'s Plan of Reorganization
In re: Pure Energy Group, Inc., Debtor
P:\kmcelwain\wpdocs\Pure Energy\Plan-Disclosure\Second Amended Plan of Reorganization.doc

PAGE 17

| Other Parties to Contract | Description of Contract |
|---|---|
| Martin Yates, III (Marbob Energy Corp.)<br>P.O. Box 227<br>Artesia, NM 88211 | Operating Agreement with Debtor |
| Nearburg Exploration Co., L.L.C.<br>3300 N. "A" St., Ste. 120<br>Midland, TX 79705 | Term Assignments/Farmout Agreements with Debtor |
| Xeric Oil & Gas Corp.<br>1801 West Texas<br>Midland, TX 79702 | Term Assignments/Farmout Agreements with Debtor |
| Concho Resources (Conoco)<br>P.O. Box 1267<br>Oakland, CA 94602-1267 | Term Assignment/Farmout Agreement with Debtor |
| Elk Oil Co.<br>500 N. Main Street, #814<br>Roswell, NM 88201 | Term Assignment/Farmout Agreement with Debtor |
| Beach Exploration, Inc.<br>800 N. Marienfeld, Ste. 200<br>Midland, TX 79701 | Term Assignments/Farmout Agreements with Debtor |
| Stratex, L.P.<br>1801 W. Texas<br>Midland, TX 79702 | Term Assignments/Farmout Agreements with Debtor |
| Howard Exploration<br>515 W. Green Road<br>Houston, TX 77067 | Term Assignment/Farmout Agreement with Debtor |
| Marbob Energy Corp.<br>P.O. Box 227<br>Artesia, NM 88211 | Term Assignment/Farmout Agreement with Debtor |
| SDK Resources<br>511 W. Ohio, Ste. 601<br>Midland, TX 79701 | Term Assignment/Farmout Agreement with Debtor |
| Murchison Oil & Gas<br>1445 Rose Ave., Ste. 530<br>Dallas, TX 75202 | Term Assignment/Farmout Agreement with Debtor |

Pure Energy Group, Inc.'s Plan of Reorganization
In re: Pure Energy Group, Inc., Debtor
P:\kmcelwain\wpdocs\Pure Energy\Plan-Disclosure\Second Amended Plan of Reorganization.doc

PAGE 18

| Other Parties to Contract | Description of Contract |
|---|---|
| ARCO Permian<br>P.O. Box 910336<br>Dallas, TX 75391-0336 | Operating Agreement with Debtor |
| Mack Energy Corporation<br>P.O. Box 960<br>Artesia, NM 88211-0960 | Operating Agreement with Debtor |
| Bass Enterprises Production Co.<br>P.O. Box 916110<br>Fort Worth, TX 76191-6110 | Operating Agreement with Debtor |
| Read & Stevens, Inc.<br>P.O. Box 1518<br>Roswell, NM 88202-1518 | Operating Agreement with Debtor |
| Altura Energy, Ltd.<br>P.O. Box 22057<br>Tulsa, OK 74121 | Operating Agreement with Debtor |
| David H. Arrington Oil & Gas, Inc.<br>P.O. Box 2071<br>Midland, TX 79702 | Term Assignment Agreement with Debtor |
| Navajo Refining & Crude Marketing<br>P.O. Box 159<br>Artesia, NM 88211-0159 | Operating Agreement with Debtor/Gas Purchase |
| Pure Resources (formerly Hallwood)<br>P.O. Box 910552<br>Dallas, TX 75391-0552 | Operating Agreement with Debtor |
| Chesapeak Operating, Inc.<br>P.O. Box 99809<br>Oklahoma City, OK 73199 | Operating Agreement with Debtor |
| Mission Resources Corporation<br>P.O. Box 201155<br>Houston, TX 77216-1155 | Operating Agreement between Bellwether Exploration Company (now Chisos, Ltd. Corporation) and Debtor |

Pure Energy Group, Inc.'s Plan of Reorganization
In re: Pure Energy Group, Inc., Debtor
P:\kmcelwain\wpdocs\Pure Energy\Plan-Disclosure\Second Amended Plan of Reorganization.doc

PAGE 19

6.02    Debtor rejects the following contracts:

| Other Parties to Contract | Description of Contract |
|---|---|
| One Riverwalk Place, L.L.C.<br>700 N. St. Mary's, Ste. 402<br>San Antonio, TX 78205 | Rent/Lease Agreement (in name of Hammer Energy Assets, Inc.) |
| Exco Resources, Inc.<br>P.O. Box 847530<br>San Antonio, TX 78284-7530 | Bookkeeping Services |
| Ikon Office Solutions<br>Texas District<br>P.O. Box 730712<br>Dallas, TX 75373-0712 | Fax/copier lease |
| Verizon Wireless<br>P.O. Box 630062<br>Dallas, TX 75263-0062 | Cellular phone services |
| Aaron Office Furniture<br>11500 I-H 10 West, Bldg. 1<br>San Antonio, TX 78230 | Rental for office furniture |
| Sprint PCS<br>P.O. Box 790105<br>Saint Louis, MO 63179-0105 | Phone Services |
| AT&T Wireless<br>P.O. Box 650054<br>Dallas, TX 75265-0054 | Cellular phone services |
| Cingular Wireless<br>P.O. Box 4460<br>Houston, TX 77097-0082 | Cellular phone services |
| Time Warner Cable Business Svcs.<br>P.O. Box 650734<br>Dallas, TX 75265-0734 | Cable services |

Rejection Claims which arise after the Bar Date must be filed with the United States Bankruptcy Clerk in San Antonio, Texas within thirty (30) days after Confirmation. Any objections to such Rejection Claims shall be filed as provided in Article VIII.

Pure Energy Group, Inc.'s Plan of Reorganization
In re: Pure Energy Group, Inc., Debtor
P:\kmcelwain\wpdocs\Pure Energy\Plan-Disclosure\Second Amended Plan of Reorganization.doc

PAGE 20

6.03.     The Revested Debtor rejects, pursuant to §365, each and every Executory Contract that was not previously rejected or assumed by the Revested Debtor as of the Confirmation Date or which is not the subject of a Motion to Assume as of the Confirmation Date.

## ARTICLE VII.

### Effect of Confirmation, Release and Binding Effect.

7.01.     Confirmation of the Plan shall operate as a discharge of the Revested Debtor from all Claims to the extent provided under §1141.

7.01.01.     The treatment of Claims and Interests in the Plan shall be deemed in exchange for and shall constitute the complete satisfaction and release of all Claims of any nature whatsoever against the Debtor, or any of their assets or properties, except where otherwise specifically provided herein.

7.01.02.     Except as specifically provided herein, the Plan shall discharge and satisfy all obligations of or Claims against the Debtor, their agents with respect to any liability or obligation of the Debtor or the Estate which arose prior to the Confirmation Date, including, but not limited to:

(a)     curing or providing for compliance with regard to any violations by the Revested Debtor of or conflicts with any regulations or licensing requirement, or of any judgment, decree, order, statute, rule or regulation of any court or any public, governmental or regulatory agency or body having jurisdiction over the Revested Debtor;

(b)     any unfair labor practices or discrimination claims, complaints or charges filed or threatened against the Revested Debtor;

(c)     any and all taxes, whether income, excise, corporate, franchise, property, sales, use, payroll, withholding or otherwise, incurred or assessed that may be apportioned to the Debtor;

(d)     any and all liability, claims or responsibility in any legal action, administrative proceedings or investigations instituted by or against the Debtor or the Debtor's assets, under any law or regulation pertaining to the health or environment including without limitation the CERCLA Act of 1980 (42 U.S.C. §9601 et seq.), as amended from time to time, the regulations promulgated thereunder, and statutes or regulations, whether federal, state or local relating to the health or environment.

7.02.     Except as otherwise provided herein, upon the Effective Date, all Claims against the Debtor shall be satisfied and released in full; and all holders of such Claims shall be precluded from asserting such Claims against the Debtor, Revested Debtor, its successors or assigns and their assets or properties, their agents, as well as, any other or further Claim based upon any act, debt, claim or omission, transaction or other activity of any kind or nature that occurred prior to the Confirmation Date.

7.03.     Upon the Order Confirming the Plan becoming a Final Order, the provisions of the Plan will bind the Debtor, the Revested Debtor, and all Creditors, whether or not they accept the Plan.

Pure Energy Group, Inc.'s Plan of Reorganization
In re: Pure Energy Group, Inc., Debtor
P:\kmcelwain\wpdocs\Pure Energy\Plan-Disclosure\Second Amended Plan of Reorganization.doc

PAGE 21

7.04.    This Plan is binding in accordance with §1141. The automatic stay provided by §362 will terminate on the Effective Date.

7.05.    On the Confirmation Date, the Debtor shall be relieved of all further obligations to file Monthly Operating Reports with the Bankruptcy Court. However, the Reorganized and Revested Debtor shall make all post-confirmation payments to the United States Trustee as may be required pursuant to 28 U.S.C. §1930(a)(6) and until the Bankruptcy Case has been closed by the Bankruptcy Court or converted to another chapter under the Bankruptcy Code, shall provide to the United States Trustee such financial reports as the United States Trustee may reasonably request.

7.06    The guaranties of Ralph Perry and Frank James will transfer from the prior obligation due to EFO Holdings, Inc. from the Debtor to the new obligation set forth herein.

## ARTICLE VIII.

### Procedures for Resolving Disputed
### Claims and Interests and Disputed Claims Reserve.

8.01.    The Revested Debtor or any other Party in Interest may object to any Claim. All objections to Claims must be filed within one hundred eighty days (180) after the Effective Date, except with respect to those Claims otherwise provided for in Section 2.04.02, upon which all objections must be filed within ninety (90) days after such Claims are filed.

8.02.    The objecting party shall litigate to Final Judgment, settle or withdraw objections to disputed Claims. All Professional Fees of the Revested Debtor incurred in the prosecution of objections to Claims shall be paid as expenses of the Plan.

8.03.    In determining the amount of the distribution due the holders of Allowed Claims prior to the resolution of all Claim disputes, the appropriate Pro Rata calculations pursuant to the Plan shall be made as if all disputed Claims were Allowed Claims in the full amount claimed by the holders thereof; provided however, that the Court may estimate a lesser amount for a Claim holder to be used in such Pro Rata calculation the Revested Debtor and the disputed Claim holder may agree upon a distribution in an amount less than that claimed. The Court has ruled in an adversary proceeding against the Class 4 claimant, Manix Energy, Ltd., but has not yet ruled on the exact amount of such claim. Such amount when ruled upon by the Court will be considered the allowed amount of the Class 4 Claim.

8.04.    The Revested Debtor shall hold and separately account for distributions in respect to disputed Claims under paragraph 8.03 (the "Disputed Claims Reserve"). In the event the Class 4 claimant appeals the Order of the Court in the adversary proceeding related to its Claim, the distribution to such claimant shall be held in the Disputed Claims Reserve.

Pure Energy Group, Inc.'s Plan of Reorganization
In re: Pure Energy Group, Inc., Debtor
P:\kmcelwain\wpdocs\Pure Energy\Plan-Disclosure\Second Amended Plan of Reorganization.doc

PAGE 22

8.05.    At such time as a disputed Claim becomes an Allowed Claim, the distributions reserved for such Allowed Claim shall be released from the Disputed Claims Reserve and delivered to the holder of such Allowed Claim.  In the event that, or to the extent that, a disputed Claim is disallowed, the distributions reserved for such Claim shall be released from the Disputed Claims Reserve for Pro Rata distribution to Allowed Claims upon the next Distribution Date.

8.06.    Except as the Court may order otherwise pursuant to paragraph 8.03 hereof, no payments or distribution shall be made with respect to all or any portion of a disputed Claim unless and until all objections to that Claim have been determined by Final Order.  Payments and distributions to each holder of a disputed Claim, to the extent that it ultimately becomes an Allowed Claim, shall be made in accordance with the provisions of the Plan with respect to the Class of Claim in which the respective holder is a member.

## ARTICLE IX.

### Retention of Jurisdiction.

The Court shall retain jurisdiction over this Case after Confirmation pursuant to, and for the purposes set forth in, § 1127(b) for the following purposes:

9.01.    To determine all controversies relating to or concerning the Classification, allowance or satisfaction of Claims;

9.02.    To determine any and all pending applications for the rejection or assumption and/or assignment, as the case may be, of Executory Contracts and unexpired leases to which the Debtor is a party or with respect to which the Debtor may be liable, and to determine and, if necessary, to liquidate, any and all Claims arising therefrom;

9.03.    To determine any and all applications, adversary proceedings, and contested or litigated matters properly before the Court, including, without limitation, sales of Property of the Estate, and any proceeding commenced for the purpose of avoiding, recovering or preserving for the benefit of the estate any transfer of property, obligation incurred by the Debtor, lien or set-off;

9.04.    To determine any dispute arising under this Plan and to make such orders as are necessary or appropriate to carry out the provisions of the Plan including to approve or determine controversies concerning closing documentation;

9.05.    To grant extensions of any deadlines set herein;

9.06.    To hear and determine all requests for compensation and/or reimbursement of expenses which may be made after Confirmation;

9.07.    To enforce all release provisions under this Plan;

9.08.    To modify the Plan pursuant to paragraph 2.05 and the Bankruptcy Code; and

Pure Energy Group, Inc.'s Plan of Reorganization
In re:  Pure Energy Group, Inc., Debtor
P:\kmcelwain\wpdocs\Pure Energy\Plan-Disclosure\Second Amended Plan of Reorganization.doc

PAGE 23

9.09.    In addition, and at any time, the Court may make such orders or give such direction as may be appropriate under Section 1142.

## ARTICLE X.

### Default Provision.

10.01.    Procedure for Default:  In the event a default by the Revested Debtor occurs under the Plan, whether monetary or non-monetary, the affected Creditor shall provide written notice of such default to:

Pure Energy Group, Inc.
c/o Mr. John B. Connally, III
153 Treeline Drive, Suite 200
San Antonio, TX  78209

**AND**

William H. Oliver
Pipkin, Oliver & Bradley, L.L.P.
1020 N.E. Loop 410, Suite 810
San Antonio, Texas  78209

both by United States certified mail-return receipt requested, and by United States first class mail, postage prepaid.  Thereafter, the Revested Debtor shall have thirty (30) days from the earlier to occur of:  (i) the date of receipt of the written notice sent by certified mail, or (ii) the date of receipt of the written notice sent by first class mail to cure the default (For the purposes of the written notice by United States first class mail, postage prepaid, such notice will be deemed received five (5) days after depositing the same in the United States mail).  In the event the Revested Debtor do not cure the default within the thirty (30) day period provided herein the affected Creditor shall be entitled to pursue its state law remedies without further notice or hearing before the Court.

Pure Energy Group, Inc.'s Plan of Reorganization
In re:  Pure Energy Group, Inc., Debtor
P:\kmcelwain\wpdocs\Pure Energy\Plan-Disclosure\Second Amended Plan of Reorganization.doc

PAGE 24

# ARTICLE XI.

## Closing.

11.01. <u>Provisions for Closing Case</u>: After the Revested Debtor tenders payment to the Creditor in Class 4 (such date being the date of the substantial consummation of the Plan), the Revested Debtor shall apply to the Bankruptcy Court for entry of a Final Decree in the Case. Pursuant to §350 and Bankruptcy Rule 3022, the Final Decree shall close the Case and make provisions by way of injunction or otherwise as may be equitable.

Respectfully submitted,

PIPKIN, OLIVER & BRADLEY, L.L.P.
1020 N.E. Loop 410, Suite 810
San Antonio, Texas 78209
Telephone: (210) 820-0082
Fax No.: (210) 820-0077

By: _____
WILLIAM H. OLIVER
State Bar No. 15265200
ATTORNEYS FOR DEBTOR

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of Debtor's Second Amended Plan of Reorganization has been delivered via U.S. First Class Mail, postage pre-paid, on this 29th day of October 2002, to all parties listed on the attached Matrix.

_____
William H. Oliver

Pure Energy Group, Inc.'s Plan of Reorganization
In re: Pure Energy Group, Inc., Debtor
P:\kmcelwain\wpdocs\Pure Energy\Plan-Disclosure\Second Amended Plan of Reorganization.doc

PAGE 25

# MATRIX

| Debtor: | Debtor's Attorney: | United States Trustee: |
|---|---|---|
| Pure Energy Group, Inc. | William H. Oliver | U.S. Trustee |
| Attn: John B. Connally, III | Pipkin, Oliver & Bradley, L.L.P. | Nancy Ratchford |
| 153 Treeline, Suite 200 | 1020 N.E. Loop 410, Suite 810 | P.O. Box 1539 |
| San Antonio, TX 78209 | San Antonio, TX 78209 | San Antonio, TX 78295-1539 |

## Twenty Largest Unsecured Creditors

| | | |
|---|---|---|
| Alicia James | American Express | ARCO Permian |
| 438 E. Rosewood Ave. | Suite 0001 | P.O. Box 910336 |
| San Antonio, TX 78212 | Chicago, IL 60679-0002 | Dallas, TX 75391-0336 |
| Capataz Operating, Inc. | Chesapeak Operating, Inc. | EFO Holdings |
| P.O. Box 10549 | P.O. Box 99809 | 2828 Routh Street, Suite 500 |
| Midland, TX 79702 | Oklahoma City, OK 73199 | Dallas, TX 75201 |
| Frank James | Internal Revenue Service | K.E. Richison & Associates |
| 526 E. 89th Street | Austin, TX 73301 | 11900 Aqueduct Rd |
| New York, NY 10128 | | Houston, TX 77044 |
| Louis Dreyfus Natural Gas | Marbob Energy Corporation | Mission Resources Corporation |
| Corporation | P.O. Box 227 | P.O. Box 201155 |
| P.O. Box 847764 | Artesia, NM 88211 | Houston, TX 77216-1155 |
| Dallas, TX 75284-7764 | | |
| One Riverwalk Place, L.L.C. | Oxy USA, Inc. | Petroleum Financial, Inc. |
| 700 N. St. Mary's, Ste. 402 | P.O. Box 841784 | 306 W. 7th, Ste. 1025 |
| San Antonio, TX 78205 | Dallas, TX 75284-1784 | Fort Worth, TX 76102 |
| Phil Brewer, Attorney | Ralph Perry | Singleton, Cooksey, Hanson & |
| P.O. Box 298 | 14115 Champions Hamlet Court | Lamberth |
| Roswell, NM 88202-0298 | Houston, TX 77069 | 6363 Woodway, Ste. 610 |
| | | Houston, TX 77057 |
| Southwestern Energy Corporation | TWC Aviation | |
| P.O. Box 1408 | 430 Parkson Rd. | |
| Fayetteville, AR 72702-1408 | Henderson, NV 89015-4045 | |

## Remaining Creditors and Parties Requesting Notice

| | | |
|---|---|---|
| Aaron Office Furniture | David Aelvoet, Esq. | Aerostar Executive Aviation |
| 11500 IH 10 West, Bldg. 1 | Linebarger Goggan Blair | P.O. Box 691634 |
| San Antonio, TX 78230 | Pena & Sampson, L.L.P. | San Antonio, TX 78269-1634 |
| | 711 Navarro, Ste. 300 | |
| | San Antonio, TX 78205 | |

American Express Gold
Attn: RPC
300 Riverside Plaza
9th Floor South
Chicago, IL 60606

ARCO Permian
Attn: Terri Sharon
Price Waterhouse
P.O. Box 591
Tulsa, OK 74102-0591

AT&T Air One
P.O. Box 2971
Omaha, NE 68103-2971

AT&T Wireless
P.O. Box 650054
Dallas, TX 75265-0054

Kenneth J. Barnhouse
Oxy USA, Inc.
5005 LBJ Freeway
Dallas, TX 75244-6119

Robert L. Barrows
Warren, Drugan & Barrows, P.C.
800 Broadway
San Antonio, TX 78215

Bass Enterprises Production Co.
P.O. Box 916110
Fort Worth, TX 76191-6110

Bradley James
700 N. St. Mary's, Ste. 1925
San Antonio, TX 78205

Capital One
P.O. Box 85184
Richmond, VA 23285-5184

Carl A. Gravell Agency
1600 N.E. Loop 410, Ste. 117
San Antonio, TX 78209

George J. Carson
Attorney at Law
405 N. St. Mary's Street, Ste. 950
San Antonio, TX 78205

Craig Gargotta, Esq.
Assistant United States Attorney
Internal Revenue Service
Department of the Treasury
300 E. 8th Street, Stop 5022AUS
Austin, TX 78701

Chi Operating, Inc.
P.O. Box 1799
Midland, TX 79702

Cingular Wireless
P.O. Box 4460
Houston, TX 77097-0082

EOG Resources, Inc.
c/o Marcy E. Kurtz
Bracewell & Patterson, L.L.P.
711 Louisiana St., Ste. 2900
Houston, TX 77002-2781

Exco Resources, Inc.
P.O. Box 847530
San Antonio, TX 78284-7530

Federal Express
P.O. Box 1140
Memphis, TN 38101-1140

Graphix Solutions by Paper Chase
425 N. St. Mary's St.
San Antonio, TX 78205

H.D. O'Neill
P.O. Box 4831
Midland, TX 79704

Penny K. Habbeshaw
Habbeshaw, Kalmans & Schwartz
The Colonnade, Ste. 770
9901 I.H. 10 West
San Antonio, TX 78230

IHS Energy Group
Dept. No. 142
Denver, CO 80271-0142

Ikon Office Solutions
Texas District
P.O. Box 730712
Dallas, TX 75373-0712

Internet Direct
722-A Isom Road
San Antonio, TX 78216

IPAA
P.O. Box 79584
Baltimore, MD 21279-0584

Jeff Hamm
274 Wood Valley
Adkins, TX 78101

Logix Communications
P.O. Box 3608
Houston, TX 77253-3608

Lone Star Overnight
P.O. Box 149225
Austin, TX 78714-9225

LOU JON Construction Company
P.O. Box 792107
San Antonio, TX 78279

Mack Energy Corporation
P.O. Box 960
Artesia, NM 88211-0960

Manix Energy, L.L.C.
P.O. Box 2818
Midland, TX 79702

MCI Worldcom
P.O. Box 856053
Louisville, KY 40285-6053

Midland Map Company
P.O. Box 1229
Midland, TX 79702

Mission Resources
Attn: Roland Sledge
1331 Lamar, Ste. 1455
Houston, TX 77010

Office Resource Center
10751 Sentinel
San Antonio, TX 78217

Office Team
File 73484
P.O. Box 60000
San Francisco, CA 94160-3484

Petroleum Listing Service
1331 Lamar, Ste. 1430
Houston, TX 77010

Philip Services Corporation
P.O. Box 201056
Houston, TX 77216

Pitney Bowes Purchase Power
P.O. Box 856042
Louisville, KY 40285-6460

Pitney Bowes, Inc.
P.O. Box 856460
Louisville, KY 40285-6460

Pure Resources, Inc.
500 West Illinois
Midland, TX 79701

R.A. Lenser & Associates
1200 Smith St., Ste. 1140
Houston, TX 77002

Read & Stevens, Inc.
P.O. Box 1518
Roswell, NM 88202-1518

Richard J. Jordan, Ph.D.
511 W. Ohio Ave., Ste. 601
Midland, TX 79701

Sylvia S. Romo, Tax Collector
Bexar County Tax Assessor
233 N. Pecos La Trinidad
P.O. Box 839950
San Antonio, TX 78283-3950

Randall Rouse
Lynch, Chappell & Alsup
300 North Marienfeld, Ste. 700
Midland, TX 79701

Sara Lee Coffee & Tea
P.O. Box 730861
Dallas, TX 75373-0861

Security Service Federal Credit
Union
P.O. Box 27397
San Antonio, TX 78227

Michael A. Short
Short & Johnston
P.O. Box 2890
Midland, TX 79702

Southwestern Bell Telephone
P.O. Box 4699
Houston, TX 77097-0075

Sprint PCS
P.O. Box 790105
Saint Louis, MO 63179-0105

Stutzman & Bromberg, P.C.
2323 Bryan Str., Ste. 2200
Dallas, TX 75201-2689

Time Warner Cable Business
Svcs.
P.O. Box 650734
Dallas, TX 75265-0734

Trammel Crow Company
c/o Benjamin R. Bingham
Bingham & Lea, P.C.
319 Maverick Street
San Antonio, TX 78212

United Healthcare
Small Group Accounting
P.O. Box 41738
Philadelphia, PA 19101-1738

Holly B. Williams
Turner, Davis & Gerald, P.C.
P.O. Box 2796
Midland, TX 79702-2796

Deborah D. Williamson
Cox & Smith, Incorporated
112 East Pecan, Suite 1800
San Antonio, TX 78205

Verizon Wireless
P.O. Box 630062
Dallas, TX 75263-0062

Walsh Engineering &
Production Corp.
7415 E. Main
Farmington, NM 87402

Yates Petroleum Corporation
105 S. 4th St.
Artesia, NM 88210

Energy Spectrum
5956 Sherry Lane, Ste. 900
Dallas, TX 75225

EOG Resources, Inc.
P.O. Box 840319
Dallas, TX 75284-0319

Intuit
P.O. Box 34328
Seattle, WA 98124-1328

Roswell Geological Society
P.O. Box 1171
Roswell, NM 88201

Altura Energy, Ltd.
P.O. Box 22057
Tulsa, OK 74121

Ballard O. Castleman
c/o EFO Holdings
2626 Cole Ave., Ste. 700
Dallas, TX 75204

Beach Exploration, Inc.
800 N. Marienfeld, Ste. 200
Midland, TX 79701

Concho Resources
P.O. Box 1267
Oakland, CA 94602-1267

David H. Arrington Oil & Gas
P.O. Box 2071
Midland, TX 79702

David Owen
c/o EFO Holdings
2626 Cole Ave., Ste. 700
Dallas, TX 75204

Petroleum Financial Corp.
306 W. 7th St., Ste. 1025
Ft. Worth, TX 76102

Pure Resources
P.O. Box 901552
Dallas, TX 75391-0582

R. Payne Lancaster
c/o EFO Holdings
2626 Cole Ave., Ste. 700
Dallas, TX 75204

SDX Resources
511 W. Ohio, Ste. 601
Midland, TX 79701

Southwestern Energy Prod.
P.O. Box 1408
Fayetteville, TX 78940

Stratex, L.P.
1801 W. Texas
Midland, TX 79702

Tenneco Oil Co.
Total/Fina
P.O. Box 2511
Houston, TX 77252

USI
Attn: Richard S. Bertasi
Two Stamford Plaza, 7th Floor
281 Tresser Blvd.
Stamford, CT 06901-3238

William P. Esping
c/o EFO Holdings
2626 Cole Ave., Suite 700
Dallas, TX 75204

Xeric Oil & Gas Corp.
1801 West Texas
Midland, TX 79702

Elk Oil Co.
500 N. Main Street, #814
Roswell, NM 88201

Fenix Royalty, L.L.C.
P.O. Box 2818
Midland, TX 79702

G. Larry Wallace
c/o EFO Holdings
2626 Cole Ave., Ste. 700
Dallas, TX 75204

GPM Gas Corporation
P.O. Box 50020
Midland, TX 79710-0020

Hammer Energy
115 E. Travis St., Ste. 412
San Antonio, TX 78205

Hanagan Petroleum Corp.
400 Kentucky Ave.
Roswell, NM 88201

Murchison Oil & Gas
1445 Rose Ave., Ste. 530
Dallas, TX 75202

Navajo Refining & Crude
Marketing
P.O. Box 159
Artesia, NM 88211-0159

Nearburg Exploration Co.
3300 N. "A" St., Ste. 120
Midland, TX 79705

Nearburg Production Co.
5447 Glen Lakes Dr.
Dallas, TX 75231

Patty Hamm
274 Wood Valley
Adkins, TX 78101

Eli O. Columbus
Winstead Sechrest & Minick, P.C.
1201 Elm Street, Suite 5400
Dallas, TX 75270

John W. Harris, Esq.
100 West Houston Street
Frost Bank Tower, Ste. 1776
San Antonio, TX 78205

Randall A. Pulman, Esq.
Stumpf Craddock Massey & Pulman
112 East Pecan Str., Ste. 700
San Antonio, TX 78205